IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

PAMELA KILTY, individually and as
Special Administrator of the Estate of
Elvira Kilty, PAUL J. KILTY, DAVID
L. KILTY, WILLIAM J. KILTY and
JAMES S. KILTY,

                Plaintiffs,                OPINION AND ORDER

   v.

                                        16-cv-515-wmc

WEYERHAEUSER COMPANY, 3M COMPANY,
and METROPOLITAN LIFE INSURANCE
COMPANY,

                Defendants.

---

SCOTT SPATZ, individually and as
Special Administrator of the Estate of
Herbert Spatz,

                Plaintiff,

   v.

                                        16-cv-726-wmc

WEYERHAEUSER COMPANY, 3M COMPANY,
and METROPOLITAN LIFE INSURANCE
COMPANY,

                Defendants.

---

These are the two most recent cases asserting asbestos-related claims against defendant Weyerhaeuser Company, among other defendants. Elvira Kilty and Herbert Spatz, both deceased, are former Weyerhaeuser employees. In an end around the Wisconsin Worker's Compensation Act's exclusivity provision, their estates and respective family members assert claims against Weyerhaeuser based on *non*-workplace exposure – so-called "community exposure" to asbestos. Weyerhaeuser nevertheless moves to dismiss

those claims based on a variety of arguments, the most significant of which is that the community exposure claims are still barred by the exclusivity provision. Among other defenses, Weyerhaeuser argues that plaintiffs' nuisance claims are barred by the applicable statute of limitations. (Weyerhaeuser's Mot. ('515 dkt. #42; '726 dkt. #31).)[1]

For the reasons that follow, the court will: (1) deny defendant's motion to dismiss under the exclusivity provision of the Workers' Compensation Act; (2) grant the motion as to plaintiffs' nuisance claims; (3) grant defendant's unopposed motion to bar plaintiff from relying on the federal regulatory scheme to prove negligent conduct; (4) deny the motion seeking to exclude plaintiffs' claim for punitive damages; and (5) deny defendant's argument that plaintiffs' claims are barred by public policy.

ALLEGATIONS OF FACT

Both of plaintiffs' respective complaints allege claims against defendant Weyerhaeuser based on asbestos fibers transported or emitted outside of the plant, either by "a. worker clothing, personal effects, hair, and skin [that] had become contaminated by asbestos fibers at the plant; and b. collecting, removing, hauling, and dumping asbestos dust and waste materials." (Am. Compl. (dkt. #39) ¶ 27.)[2] Based on these emissions into

---

[1] Unless otherwise noted, all references to the docket are to Case No. 16-cv-515.

[2] The court understands that plaintiffs' claims only involve exposure to asbestos fibers brought by others into homes shared by the plaintiffs, *not* by plaintiffs themselves. The court already explained how the former would be barred by Wisconsin's Workers' Compensation Act's exclusivity provision. *See Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036, 1042 (W.D. Wis. 2014), *on reconsideration in part* (Nov. 4, 2014), *aff'd sub nom. Pecher v. Owens-Illinois, Inc.*, 859 F.3d 396 (7th Cir. 2017) ("[W]hile exposure may have extended beyond the workplace due to fibers on clothing, in cars, at home and elsewhere, the injury still 'arose out of his employment.'").

2

the community and plaintiffs' alleged exposure to these emissions, plaintiffs bring claims for common law negligence (Count I), negligent nuisance (Count II), and intentional nuisance (Count III) against defendant Weyerhaeuser.

OPINION

I. **Worker's Compensation Act's Exclusivity Provision**

This court has previously addressed whether claims like plaintiffs are barred by the WCA's exclusivity provision. In *Boyer v. Weyerhaeuser Co.*, 39 F. Supp. 3d 1036, 1042 (W.D. Wis. 2014), *on reconsideration in part* (Nov. 4, 2014), *aff'd sub nom. Pecher v. Owens-Illinois, Inc.*, 859 F.3d 396 (7th Cir. 2017), the court held that exposure to asbestos arising out of employment -- including exposure outside of the workplace to fibers a worker carried home from the place of employment -- were barred by the WCA's exclusivity provision because the exposure still "arose out of" employment." On a motion for reconsideration, however, the court allowed plaintiffs to pursue a claim based on allegations that they "experienced measurably, causally distinct exposure to asbestos *other than* from their jobs based on Weyerhaeuser's release of asbestos fibers into the community via ambient air, in landfills, etc." *Boyer v. Weyerhaeuser*, No. 14-cv-286, slip op., at *7 (W.D. Wis. Nov. 4, 2014) (dkt. #116). In so ruling, the court expressed skepticism that plaintiffs "will ultimately be able to untangle their multiple exposures to asbestos on the job from other community exposures in a manner that would permit a reasonable jury to award separate damages for community exposure," but allowed plaintiffs to pursue nuisance claims against Weyerhaeuser "based solely on plaintiffs' exposure to asbestos *not* arising from their

employment." *Id.*

In its pending motion to dismiss in the above captioned cases, defendant Weyerhaeuser effectively seeks reconsideration of this court's holding in *Boyer* based on two arguments: (1) the Seventh Circuit's consideration of an appeal brought by some plaintiffs involving the court's treatment of expert testimony on causation and Weyerhaeuser's motion for summary judgment, among other issues, in *Pecher v. Owens-Illinois, Inc.*, 859 F.3d 396 (7th Cir. 2017); and (2) the persuasiveness of two decisions by other state courts involving asbestos exposure, which were not previously brought to this court's attention, in *Melendrez v. Ameron Int'l Corp.*, 240 Cal. App. 4th 632 (Cal. Ct. App. 2015), and *Campbell v. Lockheed Shipbuilding Corp.*, 61 P.3d 1160, 1161 (Wash. Ct. App. 2002).

In its opening brief, Weyerhaeuser argues that "[t]he Seventh Circuit has already stated that identical, asbestos-related mesothelioma claims are covered by the WCA and subject to its exclusivity provision." (Weyerhaeuser's Opening Br. (dkt. #43) 3.) In its reply, Weyerhaeuser was compelled to acknowledge that the Seventh Circuit did not reach this issue on appeal (Weyerhaeuser's Reply (dkt. #55) 6), and instead now argues that court "indicate[d]" the claims *should* be barred by the WCA's exclusivity provision (*id.* at 7-8). Even that characterization is a reach. In the introductory paragraph of the Seventh Circuit's decision, the court stated that "the claims at issue are covered by the exclusive remedy provisions of the Wisconsin Worker's Compensation Act," and that "[p]laintiffs['] attempt to get around this bar by recharacterizing their injuries as occurring off the job" is "unavailing." *Pecher*, 859 F.3d at 398. Nothing in that statement, nor in the Seventh

4

Circuit's general "affirm[ance of] the multiple rulings of the district court dismissing the claims against both defendants on appeal and denying reconsideration," suggested that court was taking a *harder* line on "community effects" evidence than did this court. To the contrary, if the Seventh Circuit had held that this court's line-drawing -- delineating the boundaries of a community exposure claim -- was in error, the court need not have reached the question of causation at all, much less make it the focus of the appellate decision. As such, while the Seventh Circuit was certainly skeptical of the plaintiffs' ability to demonstrate causation -- a skepticism it shared with this court -- the Seventh Circuit did *not* hold explicitly or implicitly that community exposure claims were barred by the WCA's exclusivity provision.

As for defendant's citations to two out-of-state decisions in support of its argument that the "claims against Weyerhaeuser based on the same WCA-covered injury should be dismissed" (Weyerhaeuser's Opening Br. (dkt. #43) 1-2), neither *Melendrez* nor *Campbell* require this court to reconsider its earlier ruling on community exposure, because each is materially distinguishable from the present case. In *Melendrez*, the plaintiff was exposed to asbestos during the course of his employment with Ameron International Corporation. *Melendrez*, 240 Cal. App. 4th at 635. Ameron allowed its employees to take home reject Bondstrand pipe if they had a signed permission slip from their supervisor. *Id.* at 636. Melendrez took pipe home each day that he could, and he used the pipe to make flower pots and part of a patio. *Id.* Melendrez's employment ended in 1985, and he was diagnosed with mesothelioma caused by asbestos exposure in 2010 and he died in 2011. *Id.* Plaintiffs sued Ameron for wrongful death, and Ameron moved for summary judgment,

arguing that California's Workers' Compensation Act barred the claim. *Id.* at 637. The trial court granted Ameron's motion for summary judgment, which the California Court of Appeals affirmed. *Id.* That court held that although a triable issue of fact existed regarding whether Melendrez's home exposure arose out of the course of employment, it was undisputed that the exposure Melendrez sustained during his employment substantially contributed to his mesothelioma. *Id.* Under the so-called "contributing cause standard," therefore, Melendrez's mesothelioma was covered under California's Workers' Compensation Act. *Id.*

As already explained in prior opinions, if plaintiffs were alleging claims based on exposure to asbestos fibers carried home from the plant (for example, on their clothing), those claims would have been barred by the Worker's Compensation Act because the exposure would still arise out of the employment, regardless of the fact that the exposure actually occurred at home. *See supra* n.2. In light of the facts at issue in *Melendrez*, therefore, this court would have agreed that his claim was barred, albeit for a different reason. Regardless, *Melendrez* is materially distinguishable from the present case because California's causation standard is different than the causation standard articulated by the Seventh Circuit in considering asbestos claims under Indiana law and applied by this court in its past asbestos cases. *Melendrez* applies the contributing cause standard to hold that because the plaintiff's employment substantially contributed to his mesothelioma, plaintiff's tort claim was barred by California's Workers' Compensation Act. Under *Melendrez* then, if a plaintiff's employment is a "substantial contributing factor" to his or her injury, that plaintiff's injury is barred by California's Workers' Compensation Act, and

6

no other causes are to be considered.

The Seventh Circuit interprets the "substantial contributing cause standard" differently. In *Tragarz v. Keene Corp.*, 980 F.2d 411 (7th Cir. 1992), the Seventh Circuit rejected the idea that "the so-called substantial factor test is a comparative test in which the jury assess[es] all contributing causes and determines which ones are substantial." *Tragarz*, 980 F.2d at 424. Instead, the Seventh Circuit stated that:

> courts in applying the substantial factor test do not seem concerned with which of the many contributing causes are *most* substantial. Rather, they seem concerned with whether each contributing cause, standing alone, is a substantial factor in causing the alleged injury.

*Id.* (emphasis added). Applying the Seventh Circuit's interpretation, at the pleading stage, plaintiffs do not need to allege that the deceased's non-occupational exposure was more substantial than the deceased's occupational exposure. Rather, plaintiffs must allege that the former factor, on its own, substantially contributed to their injury. While plaintiffs will carry the significant burden of proving that non-occupational, community exposure, on its own, were a substantial contributing factor to the deceased's mesothelioma at summary judgment, the Wisconsin Workers' Compensation Act does not preclude plaintiffs from bringing such a claim altogether.

*Campbell* can also be distinguished from the present case. In that case, Patrick Campbell worked on Lockheed's premises while he was a Lockheed employee. *Campbell*, 61 P.3d at 1161. He also worked on Lockheed's premises while he was employed by some of Lockheed's subcontractors. *Id.* In 2001, Campbell was diagnosed with mesothelioma and sought to bring a tort claim against Lockheed for the asbestos exposure he sustained

7

while working for subcontractors on Lockheed's premises, alleging that the Longshore Harbor Workers' Compensation Act ("Longshore Act") did not bar his tort claim because Lockheed was not his employer at the time of the injury. *Id.* at 1162-63. The Washington Court of Appeals held that Campbell could not bring a tort claim against Lockheed because the Longshore Act limited its liability and provided the exclusive remedy for his injury. *Id.* at 1164. The court reasoned that because both Lockheed and its subcontractors employed Campbell for part of the time he was exposed to asbestos, they all constituted "employers" under the Longshore Act, and all of them were exclusively liable for Campbell's injury under that Act. *Id.* at 1163.

Again, the present case does not call for the same outcome. Unlike the deceased in the present case, Campbell sustained all of his asbestos exposure *on Lockheed's premises*; Campbell did not allege any community or other non-occupational exposure. Second, *Campbell* principally addresses how far liability spreads for asbestos exposure when someone variously worked as a defendant's employee and for independent contractors on that same defendant's property, an issue that is not even before this court.

In short, neither *Melendrez* and *Campbell* offer a reason for this court to reconsider its position on community exposure. While the court remains skeptical that plaintiffs will be able to *prove* the causal link, or that a reasonable jury could allocate separate damages to that community exposure, that skepticism alone is an insufficient basis to dismiss plaintiffs' complaints, and defendant's motion to dismiss under the WCA's exclusivity provision is DENIED.

**II. Statute of Limitations Defense**

Next, defendant seeks dismissal of plaintiffs' respective nuisance claims on the basis that they are barred by the applicable statute of limitations. In response, plaintiffs clarify that they are only pursuing public nuisance claims. In the previous Weyerhaeuser asbestos cases, the plaintiffs pursued *private* nuisance claims, and the court determined that those claims were barred by the statute of limitations, which the Seventh Circuit affirmed in *Pecher*. *See Boyer,* No. 12-CV-899-WMC, 2016 WL 705233, at *25; *Pecher*, 859 F.3d at 400.

Weyerhaeuser contends, however, that the public nuisance claims are also barred by the statute of limitations, since those claims similarly involve a claimed injury -- the public right to clean air -- which on the face of plaintiffs' complaints ended when Weyerhaeuser ceased use of asbestos in 1979. (Weyerhaeuser's Reply (dkt. #55) 18-19; Am. Compl. (dkt. #39) ¶ 12 (alleging that Weyerhaeuser's predecessor used asbestos in the manufacturing of fireproof doors from 1955 to 1979).) Plaintiffs' sole response to this argument is to recycle arguments relying on private nuisance cases that have already been rejected by this court. (Pls.' Opp'n (dkt. #49) 18-19.) In particular, as the court previously explained, the situation at issue in the stray voltage cases cited by plaintiffs, *Allen v. Wisconsin Public Service Corporation*, 2005 WI App 40, ¶ 8, 279 Wis. 2d 488, 694 N.W.2d 420), and *Gumz v. Northern States Power Company*, 2006 WI App 165, ¶ 3, 295 Wis. 2d 600, 721 N.W.2d 515, involve cases where the injury was known, but the source of the injury was not. *See Boyer*, 2016 WL 705233, at *26 ("While the court agrees the discovery rule is available for private nuisance claims, it would only apply when the plaintiff is aware

9

of an injury, but does not know its cause. In the stray voltage context, for example, the plaintiff farmers knew that their cows were suffering; they simply did not know the source of their injury."). Here, however, the claimed injury -- mesothelioma -- did not arise until decades after the alleged nuisance, further proving that a nuisance claim, whether private or public, intentional or negligent, is ill-fitted to the facts at issue in these cases. *See id.* ("[D]efendant's statute of limitations defense highlights again the ill fit of this claim to plaintiff's injuries: the claimed injury is not the enjoyment of plaintiff's land.")

While plaintiffs failed to develop any other argument, the court considered whether plaintiffs' claims could be viewed as a continuing nuisance, relieving plaintiffs of the six-year statute of limitations under Wis. Stat. § 893.52 for damage to property or the likely more appropriate, three-year statute of limitations under Wis. Stat. § 893.54 and § 893.57 for intentional and negligent tort claims. *See generally Sunnyside Feed Co. v. City of Portage*, 222 Wis. 2d 461, 469, 588 N.W.2d 278, 282 (Wis. Ct. App. 1998) (describing difference between permanent and continuing nuisance). The alleged air quality issue, however, still ended with Weyerhaeuser ceasing use of asbestos in 1979 or shortly thereafter, rendering meaningless whether the admissions during the course of Weyerhaeuser's use of asbestos could be viewed as a continuing nuisance. Moreover, even if the asbestos exposure itself could be deemed an injury, a continuing injury "does not extend the period of limitations." *Stockbridge-Munsee Cmty. v. Wisconsin*, No. 17-CV-249-JDP, 2017 WL 4857646, at *4 (W.D. Wis. Oct. 25, 2017) (quoting *Turley v. Rednour*, 729 F.3d 645, 654 (7th Cir. 2013)). Accordingly, plaintiffs' nuisance claims are DISMISSED.

### III. Applicability of Clean Air Act Standards

The court previously considered a similar challenge in *Boyer,* concluding that the plaintiffs could not "rely on NESHAP or other regulatory standards under the CAA to prove negligent conduct under either a private or public nuisance claim" because it "would upend the federal statutory scheme." *Boyer v. Weyerhaeuser Co.*, No. 14-CV-143-WMC, 2015 WL 3485262, at *2 (W.D. Wis. June 2, 2015), *reconsideration denied*, No. 14-CV-143-WMC, 2015 WL 12912320 (W.D. Wis. July 21, 2015), *aff'd sub nom. Pecher v. Owens-Illinois, Inc.*, 859 F.3d 396 (7th Cir. 2017). Conceding this point in their opposition, plaintiffs state that the reference to this statutory scheme at paragraph 49(o) in the amended complaint was an oversight. (Pls.' Opp'n (dkt. #49) 21.) As such, this portion of defendant's motion is GRANTED as unopposed.

### IV. Availability of Punitive Damages

Weyerhaeuser also seeks dismissal of plaintiffs' claim to punitive damages on the basis that their pleadings do not meet the requirement of Federal Rule of Civil Procedure 8. Under Wisconsin law, punitive damages are available if plaintiffs can prove an intentional disregard of their rights. *See* Wis. Stat. § 895.043(3). Whether or not it can be proved, plaintiffs here have sufficiently alleged that defendant acted in intentional disregard of their rights in releasing asbestos fibers into the air. (*See, e.g.*, Am. Compl. (dkt. #39) ¶¶ 31-36 (alleging that Weyerhaeuser knew of emissions and knew that exposure to asbestos emissions caused disease and death).) This is all that is needed to meet the requirements of Rule 8. Accordingly, this portion of the motion will be DENIED.

### V. Public Policy Concerns

Finally, Weyerhaeuser seeks dismissal of the remaining negligence claim on public policy grounds. The court previously rejected this same argument and will do so again here.

> While this argument may have merit, the court declines to consider it on the pleadings alone, finding that the court will benefit from a more robust record in weighing the public policy factors. Also, the court is concerned about judicial efficiency, since there will be no need to consider public policy if there is no finding of negligence. *See Alvarado v. Sersch,* 2003 WI 55, ¶ 18, 262 Wis.2d 74, 662 N.W.2d 350 ("In most cases, the better practice is to submit the case to the jury before determining whether the public policy considerations preclude liability.").

*Boyer*, 2015 WL 3485262, at *4. As such, this part of the motion is also DENIED.

### ORDER

IT IS ORDERED that defendant Weyerhaeuser Company's motion to dismiss ('515 dkt. #42; '726 dkt. #31) is GRANTED IN PART AND DENIED IN PART consistent with the above opinion.

Entered this 17th day of April, 2018.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge